## MacMillan Co. v. United States (No. 2203).[1]

AMENDMENT OF ENTRY.

Paragraph I, Section III, tariff act of 1913, is intended to permit an importer to amend his entry to make market value between the time of the filing of the entry and the time when the invoice or merchandise comes to the observation of the appraiser. (Art. 227, Customs Regulations, 1915.) Within the meaning of this paragraph the observation of the examiner is not that of the appraiser, and does not become such until his report reaches the appraiser. Consequently an application for amendment made after entry and after invoice and merchandise had come to the observation of the examiner, but before the examiner had reported, was seasonable and should have been allowed.

[1] T. D. 39536.

United States Court of Customs Appeals, March 17, 1923.

APPEAL from Board of United States General Appraisers, G. A. 8553. (T. D. 39189).

[Reversed.]

*Curie, Lane & Maxwell* (*Thomas M. Lane* of counsel) for appellant.

*William W. Hoppin*, Assistant Attorney General (*Harry M. Farrell*, special attorney, of counsel), for the United States.

[Oral argument November 21, 1922, by Mr. Lane and Mr. Hoppin.]

Before SMITH, BARBER, and MARTIN, Associate Judges.

SMITH, Judge, delivered the opinion of the court:

Certain books and printed matter imported by the appellant at the port of New York were entered for consumption at the customhouse on the 24th of March, 1920. The collector designated two cases of the importation for examination and transmitted the invoice to the appraiser's stores, at which place it reached the hands of the examiner on the 26th of March, 1920. One of the cases designated for examination came under the observation of the examiner on the 5th and the other on the 6th of April, 1920.

On the 8th of April, 1920, the importer applied to the collector for leave to amend its entry by adding to the market value certain discounts which had been deducted by the custom brokers acting for the importer. The collector refused to allow any amendment to the entry on the ground that the invoice and merchandise had come under the observation of the appraiser before application to amend was made.

The examiner on the 26th of April, 1920, reported to the assistant appraiser, first, that all discounts claimed in the entry and in excess of 33⅓ per cent should be disallowed; second, that the value of the importation should be advanced to the extent of the disallowed discounts. On the day on which that report was made it was passed by the assistant appraiser to the appraiser, who approved the action of the assistant appraiser on the 27th of April, 1920.

Neither the invoice nor the merchandise was seen or considered by the appraiser or deputy appraiser or assistant appraiser prior to the 26th of April, 1920.

The collector liquidated the entry on the 8th of December, 1920, and because of the advance in value resulting from the disallowance of some of the discounts deducted in the entry he assessed in addition to the regular duties, a duty of one per cent of the total appraised value of the merchandise for each one per cent that such appraised value exceeded the value declared in the entry as originally made.

The importer protested against the levy of the additional duties and the Board of General Appraisers having overruled the protest the importer appealed.

The board held that the examiner was the eyes, hand, and voice of the appraiser and that therefore the date on which the invoice and the merchandise covered thereby came to the observation of an *examiner* of merchandise was the date on which such invoice and such merchandise came to the observation of the appraiser. That holding is not warranted in our opinion either by the plain terms of the statute or by the official status of the appraiser or by the powers of the examiner and apparently has nothing to support it except assumed administrative expediency. Indeed, the board frankly bases its decision on the ground that the volume of business at such a port as New York is so great that the appraiser can not take note of all invoices which come to his office and can not personally appraise all merchandise which it is his duty to appraise.

That the appraiser, unaided by the reports of competent subordinates, can not consider all the invoices filed with the collector or examine all the merchandise that comes into the port of New York must be admitted. Nevertheless that condition does not excuse a judicial amendment of the law and does not justify the extra-official substitution of the word "examiner" for the word "appraiser" in paragraph I of section III. We are quite certain, however, that the substitution of one word for the other is not imperatively demanded by the exigencies of the service and that if the language of paragraph I is given its plain ordinary meaning administrative efficiency will not thereby be affected or impaired.

If at the outset the appraiser does not see the invoice or examine the merchandise, sooner or later the invoice checked up with the goods by the examiner and accompanied by the advisory reports of the examiner and the assistant appraiser as to the nature and value of the merchandise does come to the appraiser for consideration, and until that happens he does not see, can not see, and consequently can not officially observe or know what the examiner and assistant appraiser saw or thought they saw.

When the invoice and the official reports of his subordinates as to the nature and value of the merchandise come to the appraiser for his consideration, then for the first time does he see the invoice and merchandise through the eyes of the examiner or through those of the assistant appraiser, and then for the first time may it be truly said that the invoice and merchandise have come either actually or constructively under the observation of the appraiser. The observation and judgment of the examiner and assistant appraiser do not, however, become the observation and judgment of the appraiser until he approves their reports. (Articles 1120 and 1123, Customs Regulations of 1915.)

On the 8th of April, 1920, the appraiser had not seen or considered the invoice or merchandise, and inasmuch as no official report concerning such invoice or merchandise was seen or considered by him or in fact by the deputy appraiser or assistant appraiser prior to the 26th day of April we must hold that the application to amend the entry was made before the invoice or merchandise came either actually or constructively under the observation of the appraiser. The application to amend was therefore made within the time prescribed by paragraph I, section III of the act of 1913, and should have been allowed by the collector.

That Congress had no intention to cut off the right of amendment once the invoice or merchandise came to the observation of the *examiner* is manifest not only from the terms of the statute but from the history of the legislation as well.

Under section 7 of the act of June 10, 1890, the owner, consignee, or agent of imported merchandise might *at the time he made entry, but not afterwards*, make such *addition* to the invoice cost or value as would in his opinion raise such cost or value to the actual market value. That addition might avoid the imposition of additional duties, but it had no effect whatever on the regular duties which were required to be assessed upon an amount not less than the invoice or entered value. The fact that the section did not permit the lowering of the invoice value and required that duty should be taken on not less than the invoice or entered value resulted in serious injustice to importers who in good faith relied on invoices made abroad over which they had and could have no effective control.

Section 7 of the act of June 10, 1890, was consequently amended by section 28 of the act of 1909, in such a way that *at the time of entry, but not afterwards*, the importer was permitted to increase or *reduce* the invoice value in order to make market value. Notwithstanding that amendment, however, it was still necessary to rely on invoices in making the original entry and as the entry once made could not be altered or amended importers continued to be penalized for overvaluation and undervaluations, which although made in good faith could not be corrected. That unfortunate situation was expressly called to the attention of Congress and brought about a further amendment of section 7 of the act of June 10, 1890, and a modification of the harsh rigid rule making the *original* entered value determinative of the duties and additional duties, if any, which should be assessed on ad valorem goods. (See Tariff Hearings, 1913, Vol. VI, pp. 6252, 6253, 6254, 6255, 6323, 6324), par. I of Sec. III of the act of 1913.)

As the law now stands the owner, consignee, or agent at the time of entry, *but not after either the invoice or the merchandise has come to the observation of the appraiser*, may make in the entry such additions

to or deductions from the invoice cost or value as will raise or lower such invoice cost or value to market value.

The Government contends in effect that the purpose of paragraph I was not at all benevolent and that it was the intention of Congress to make the second condition of the importer worse than the first by blocking any change in the invoice value *after entry* and by prohibiting any such change *on entry* in case the invoice or merchandise was seen *before entry* by the appraiser or any examiner of merchandise.

That interpretation does not appeal to us, first, because it would either leave the importer less favorably situated than he was under, section 7 of the act of 1890 or it would render inoperative and reduce to mere surplusage the words "but not after either the invoice or the merchandise has come under the observation of the appraiser."

The collector may receive, and frequently does receive, the triplicate invoice before entry is or can be made, and if that invoice could be and should be transmitted at once to the appraiser it is evident that the importer, before he had any opportunity to enter his goods, would be barred from making any addition to or deduction from the invoice value.

The goods can not be examined or appraised until they are brought within the territorial jurisdiction of the United States with intention to unlade and not then until they are entered at the Custom House and the collector, after presentation of importer's entry and invoice, designates on the entry and invoice the package or packages to be examined or appraised. Section 2901, Revised Statutes. (Articles 230, 563, 572, 582, 1120, and 1124, Customs Regulations, 1915.)

It is not clear, therefore, just how the invoice could properly or in due course come to the attention of the appraiser before entry, or, if it could, why Congress should penalize the importer by holding him to the invoice value in case he received his duplicate invoice and made entry after the triplicate invoice came to the hands of the collector and was passed to the appraiser.

Moreover, if the invoice and the collector's designation thereon can not be properly transmitted to the appraiser or examiner until imported goods are entered, and if no examination to determine the nature and value of such goods can be made until the package or packages to be examined are designated by the collector, and if the importer must make his additions or deductions *at the time* he presents his original entry, it is apparent that the words "but not after either the invoice or the merchandise has come under the observation of the appraiser" accomplish no useful purpose and must be regarded as surplusage. An interpretation which brings about such a result as that can not, of course, be favored and must yield to a construction which gives effect to the language used and is not at variance with the manifest legislative intent. Such a construction is found in

article 227 of the Customs Regulations of 1915, which article was promulgated after the passage of the act of 1913 and reads as follows:

ART. 227. *Amendment of value on entry.—After an entry has been lodged* in the custom-house no change shall be made in the value thereon, except that the importer may, upon application to the collector, be permitted to amend his entry if it shall appear that the invoice or merchandise has not come under the observation of the appraiser. (Italics not quoted.)

That article, we think, properly defines the rights conceded by paragraph I to the importer and permits *after* entry the amendment which it was the purpose of that paragraph to allow.

We are of the opinion, first, that an importer may amend his entry after entry and before the invoice or the merchandise comes to the observation of the appraiser; second, that the invoice and the merchandise come to the observation of the appraiser either when he personally and officially considers the one or examines the other, or when the invoice or examination of the merchandise is officially reported to him for consideration.

The decision of the Board of General Appraisers is *reversed.*