UNITED STATES *v.* WILLIAM PRYM OF AMERICA (INC.) (NO. 3170)[1]

United States Court of Customs and Patent Appeals, June 22, 1929

*Charles D. Lawrence,* Assistant Attorney General (*Oscar Igsteadter,* special attorney, of counsel), for the United States.
*B. A. Levett* for appellee.
*Lamb & Lerch, amici curiæ.*

[Oral argument May 16, 1929, by Mr. Igstaedter, Mr. Levett, and Mr. Lerch]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, and GARRETT Associate Judges[2]

GARRETT, Judge, delivered the opinion of the court:

There is no substantial controversy concerning the facts of this case, the issues presented being questions of law.

It appears from the record that on July 19, 1926, an order was issued from the Treasury Department purporting to be a finding under section 201, Title II, Antidumping Act of 1921, T. D. 41713. The order is signed "F. A. Birgfeld, Acting Assistant Secretary," and reads as follows:

---

[1] T. D. 43475.

[2] LENROOT, Judge, did not participate in this decision, the case having been argued before he took his seat.

*Antidumping—Finding by the Secretary of the Treasury*

The Secretary of the Treasury makes a finding under section 201 (a), antidumping act of 1921, of dumping in the case of pins imported from Germany

TREASURY DEPARTMENT, *July 19, 1926.*

*To Collectors of Customs and Others Concerned:*

Section 201 (a) of the antidumping act of 1921 provides as follows:

That whenever the Secretary of the Treasury (hereinafter in this Act called the "Secretary"), after such investigation as he deems necessary, finds that an industry in the United States is being or is likely to be injured, or is prevented from being established, by reason of the importation into the United States of a class or kind of foreign merchandise, and that merchandise of such class or kind is being sold or is likely to be sold in the United States or elsewhere at less than its fair value, then he shall make such finding public to the extent he deems necessary, together with a description of the class or kind of merchandise to which it applies in such detail as may be necessary for the guidance of the appraising officers.

After due investigation I find that the industry of making pins in the United States is being or is likely to be injured by reason of the importation into the United States of common and safety pins from Germany, and that such merchandise is sold or is likely to be sold in the United States at less than its fair value.

F. A. BIRGFELD,
*Acting Assistant Secretary.*

March 8, 1926, appellee made entry, No. 865579, of an importation from Germany of merchandise consisting of safety pins. This was prior to the issuance of T. D. 41713, but this fact is immaterial in the determination of the issues. The local appraiser made return of the invoice with an appraisement made pursuant to the finding of Birgfeld, above quoted, and the importer filed an appeal for reappraisement, as provided in section 501 of the Tariff Act of 1922 and section 210 of the Antidumping Act of 1921. This appeal was abandoned when the case came on for trial before Chief Justice Fischer, sitting in reappraisement, and he rendered decision, saying:

This appeal having been abandoned, the appraised values are affirmed.
Let judgment be entered accordingly.

The entry was then liquidated as of date March 28, 1928, and assessment made under section 202 (a), Antidumping Act of 1921, which reads as follows:

SEC. 202. (a) That in the case of all imported merchandise, whether dutiable or free of duty, of a class or kind as to which the Secretary has made public a finding as provided in section 201, and as to which the appraiser or person acting as appraiser has made no appraisement report to the collector before such finding has been so made public, if the purchase price or the exporter's sales price is less than the foreign market value (or, in the absence of such value, than the cost of production), there shall be levied, collected, and paid, in addition to the duties imposed thereon by law, a special dumping duty in an amount equal to such difference.

Thereupon the importer proceeded by way of protest, his protest being filed in accordance with the statute, and being declared to be—

On the ground that the so-called "antidumping finding" on the basis of which you (the collector of customs) have assessed such special dumping duty, reported in T. D. 41713, was illegal, null and void, and of no force and effect in that it was not signed and/or issued by the Secretary of the Treasury.

We claim that no special dumping duties or other duties are properly assessable against such merchandise except such duties as properly accrue under the act of September 21, 1922 (the Tariff Act of 1922).

The Customs Court rendered decision sustaining the protest and directing the collector "to reliquidate, refunding all the dumping duties assessed upon said merchandise by virtue of T. D. 41713." The Governmet has appealed to this court.

The first issue presented is as to the legality of T. D. 41713, it not having been signed by the Secretary of the Treasury personally, but by another person who signs as "Acting Assistant Secretary."

Counsel for appellant makes no contention upon this question in the brief filed or in the discussion at bar. His argument is wholly upon the second legal question later determined herein.

In pursuing this course, counsel for the Government has followed the correct ethical legal practice under the circumstances attending the controversy, because he is an official assistant to the Attorney General of the United States, who, on December 12, 1925, in the course of official duty, rendered an opinion found in Opinions of the Attorney General, folio 35, page 15, the syllabus of which reads:

The powers conferred on the Secretary by section 201 of the Emergency Tariff Act of May 27, 1921, the so-called antidumping provision, are intended to be personal to the Secretary, and the findings and their publication should have his personal approval.

The argument on this phase of the case is presented in a brief and at the bar by *amici curiæ*, under permission granted by this court.

It is the contention of appellee that the authority conferred upon the Secretary of the Treasury under section 201 (a) of the Antidumping Act of 1921 is an authority which must be exercised by the Secretary personally, that he alone is clothed with power to execute it, and that the order promulgated by Mr. Birgfeld as Acting Assistant Secretary was without authority of law and hence was null, void, and of no effect. It is further contended that a legal finding and order under said section 201 (a) must be first had as a basis for the assessment of the duties provided for in section 202 (a) quoted above, and that since the Birgfeld order and finding was void because of lack of authority in him to issue it, the assessment of the collector based upon it is likewise null and void.

It is the contention of *amici curiæ* that under the law the authority granted in section 201 (a) was one which could be delegated by the Secretary of the Treasury to a proper subordinate in the Treasury

Department; that Mr. Birgfeld was the chief clerk of the department and at the time of the issuance of the order was temporarily an Acting Assistant Secretary and hence had the legal power to issue it. It is also contended that the general order of the Secretary of the Treasury for the publication, as provided by law, of what are known as TREASURY DECISIONS constituted such a ratification by him of T. D. 41713 as to render it legal and effective even though the latter was not signed by him personally. There is published weekly a pamphlet containing a compilation of Treasury decisions, decisions of the Customs Court, decisions of the Court of Customs and Patent Appeals, and of such decisions of other United States courts as relate to Treasury matters. Upon the outer cover of this pamphlet there appears regularly, over the name of the Secretary of the Treasury, a statement which reads:

The within decisions are published for the information and guidance of customs, internal-revenue, and prohibition officers and others concerned.

This statement, signed "A. W. Mellon, Secretary of the Treasury," was upon the cover of the pamphlet which contained T. D. 41713 and it is the contention of *amici curiæ* that this gives that finding legal effect.

In the case of *United States* v. *Central Vermont Railway Co.* (Commonwealth Shoe & Leather Co.), 17 C. C. P. A. 166, T. D. 43474, which is being decided contemporaneously with the instant case, this court (the writer of this opinion dissenting) holds valid an order issued under section 201 (a) Antidumping Act 1921, by Edward Clifford, Assistant Secretary.

The instant case, it will be observed, differs from the case immediately above cited, in that the order, T. D. 41713, was not issued by an Assistant Secretary of the Treasury but by a person who signed "Acting Assistant Secretary," and who, it is stated in the opinion of the court below, was, at the time, in fact, chief clerk of the Treasury Department.

While three of the four judges of this court participating in the decision of these two cases are agreed, for the reasons stated in the opinions given in the *Central Vermont Railway Co.* (Commonwealth Shoe & Leather Co.) case, *supra*, that a finding under section 201 (a), Antidumping Act 1921, when signed by an Assistant Secretary, rather than by the Secretary himself, is valid, yet we are all agreed that the authority to make such findings and sign such orders was not intended by Congress to be extended to the chief clerk acting at the time as an Assistant Secretary, and, therefore, the conclusion reached in the instant case must be different from that reached in the other.

The authorities upon which the controlling opinions rested in the former case are set forth in the decision and it is not deemed necessary to restate or review them here. Those opinions rest upon

184

section 22, U. S. C. (161 R. S.), section 246, U. S. C. (R. S. 234), and section 247, U. S. C. (R. S. sec. 245), as construed and applied in various court decisions cited, particularly upon the language of section 247, which reads:

247. SAME; DUTIES.—The *Assistant Secretaries* of the Treasury shall * * * perform such other duties in the office of the Secretary of the Treasury as may be prescribed by the Secretary, or by law. (Italics ours.)

We are unable to find any authority at any time conferred by Congress upon the chief clerk to do what the majority hold the Assistant Secretaries are authorized to do.

United States Code, section 249, is quoted in the supplemental brief of *amici curiæ.* It reads as follows:

249. CHIEF CLERK AND SUPERINTENDENT TO BE CHIEF EXECUTIVE OFFICER OF DEPARTMENT.—The chief clerk and superintendent of the Treasury Department shall be the chief executive officer of the department, and may be designated by the Secretary of the Treasury to sign official papers and documents during the temporary absence of the Secretary, Undersecretary, and Assistant Secretaries of the department.

We do not see how under any theory this language can be construed to mean that it was the intent of Congress in the Antidumping Act of 1921 to authorize the chief clerk to perform a function which that act itself said was to be performed by "the Secretary of the Treasury (hereinafter in this Act called the 'Secretary')."

It is true that section 22, title 5, U. S. Code (R. S. 161), says:

22. DEPARTMENTAL REGULATIONS.—The head of each department is authorized to prescribe regulations, not inconsistent with law, for the government of his department, the conduct of its officers and clerks, the distribution and performance of its business, and the custody, use, and preservation of the records, papers, and property appertaining to it.

But we do not think it contains anything which can be construed as being equivalent in law to the language of 247 U. S. C. applicable to Assistant Secretaries, quoted *supra,* nor do we think the fact that, underneath the name of the person signing, the words "Acting Assistant Secretary" appeared changes the legal situation of the case. We find no law in the statutes governing the Treasury Department which seems to us to authorize a delegation by the Secretary of the Treasury of the authority conferred upon him in section 201 (a), Antidumping Act of 1921, to the chief clerk or to any person signing as "*Acting* Assistant Secretary,"

Mr. Justice Tilson, in deciding the instant case in the Customs Court, said:

Certainly it was not the intention of Congress that a power vested in the Secretary of the Treasury to make a finding which would authorize customs officials to assess additional duties upon merchandise imported under certain specific conditions should be delegated by him to the chief clerk of the Treasury Department * * *.

With this statement we are in agreement.

In the case of *United States* v. *Tower & Sons*, 14 Ct. Cust. Appls. 421, T. D. 42058, this court held that the Secretary had not the authority to delegate to a special agent the right to designate the kind or class of merchandise to which the antidumping duty should apply, saying:

Congress intrusted to the Secretary the responsible duty of designating certain imported merchandise as being subject to such duties. Since it imposed this responsible duty on the Secretary, he is without power to delegate it to a special agent. The facts here suggest the necessity for the application of the maxim *delegata potestas non potest delegari*—a delegated authority can not be redelegated. Corpus Juris, vol. 18, p. 471. This principle of law, which is ordinarily applied to the relationship of principal and agent in commercial affairs, also applies in cases like the one at bar, where the delegated power involves the exercise of discretion. Here Congress delegated to a high executive officer the responsible duties of making an investigation, determining the facts, and promulgating the same, in reference to a very important financial matter and for him in turn to redelegate the same is a failure to comply with the mandate of the legislature. *Blair* v. *City of Waco*, 75 Fed. 800; *City of New Orleans* v. *Sanford*, 137 La. 628, 69 So. 35; *MacMillan* v. *United States*, 11 Ct. Cust. Appls., 466; *Waddell* v. *United States*, 13 Ct. Cust. Appls., 424.

The principle there asserted, we think, is applicable here.

It is insisted, however, by *amici curiæ* that the statement appearing on the outer cover of the pamphlet entitled "Treasury Decisions," issued over the name of the Secretary himself, ratified and validated the finding. We can not concur in this view. If found by one without authority to act, it could not be made valid simply by including it in one of these pamphlets issued weekly as a matter of routine.

We accordingly hold T. D. 41713 to have been a finding by one having no authority conferred upon him by Congress to make same and, therefore, void and to have been void *ab initio*, and the antidumping duties assessed upon it as a basis, illegal and invalid.

We turn now to the contention of counsel for the Government. With much earnestness it is insisted that, even if the court reaches the conclusion that the finding, T. D. 41713, was void from the beginning, and the assessment based upon it invalid, nevertheless, appellee is estopped from escaping payment of the additional duties assessed thereon, because after appealing to reappraisement it abandoned the appeal and decision as quoted, *supra*, was made and judgment rendered.

We do not understand any question to be raised as to the right of the importer generally to proceed by way of protest in cases like this, but it is insisted that procedure by this method is precluded in this particular case by the abandonment of the appeal to reappraisement and the entrance of the judgment from which no appeal was taken directly.

In the final analysis the Government's contention involves the question of whether the single justice of the Customs Court sitting in reappraisement had *jurisdiction* to make the decision and render the judgment. In the brief by Government counsel it is stated:

We admit that if Chief Justice Fischer had no jurisdiction to render judgment in reappraisement 75166–A (the number of the case at bar) that said judgment is void.

We have been cited in the Government's briefs to a number of cases relied upon as precedents. Among these are several collated in American Digest, 2d Decennial Edition, vol. 13, p. 2115, under Judgment, Key No. 651, under the heading of "Judgment by Confession or on Consent or Offer." *Delat & Pine Co.* v. *Sherwood*, 187 Ill. App. 167; *Coyle* v. *Taunton Safe Deposit & Trust Co.*, 103 N. E. 288, 216 Mass. 156; *Farmers' State Bank of Arkansas City* v. *Stephenson*, 102 P. 992, 23 Okl. 695; *Robbins & Hubbard*, 108 S. W. 773 (Texas) and others are given. We have examined all these and others. It does not appear that in any one of them a state of facts was involved similar to those involved in the case at bar. In no one of them was there a judgment predicated upon any law that was held to be void as we hold the finding in this case to have been. It is not deemed necessary to review these cases in detail. Neither does the case of *United States* v. *Tampa Box Co.*, 15 Ct. Cust. Appls., 360, T. D. 42561, involve the same question that is presented here.

Upon reason, and in the absence of applicable authorities *contra*, this court feels constrained to hold that such jurisdiction as was assumed by Justice Fischer, sitting in reappraisement in rendering the judgment complained of, having been based upon a finding which was void *ab initio*, the judgment itself was vitiated and so it, too, was and is void.

In the case of *United States* v. *Robinson*, 12 Ct. Cust. Appls. 145, T. D. 40062, the court said:

It might be well to add that if it were admitted that the Board of General Appraisers sitting in reappraisement was a judicial tribunal, and if it were further admitted that the attack on its decision in this case was collateral, we do not think such attack would be in contravention of the rule against collateral attacks on decisions of judicial tribunals, for the reason that the finding of the Board of General Appraisers sitting in reappraisement in this case was absolutely void for want of jurisdiction. It was not voidable, but void—a nullity with no more force and effect than if it had not been entered. Such a judgment, decree, or finding may be attacked in any judicial tribunal, in any other cause, at any time the question arises.

The court below put the matter quite tersely and succinctly, saying:

Without the existence of a valid order of dumping by the Secretary of the Treasury, the appraiser had no authority to find a dumping duty; without a valid order of dumping by the Secretary of the Treasury, the reappraisement

justice had no power or jurisdiction to find a dumping value; and the action of the appraiser and the single justice sitting in reappraisement were not voidable, but void *ab initio* as though they had never been made.

In this connection, we quote the following from Brown on Jurisdiction, second edition, section 26, pages 131 and 132:

If the court lacks jurisdiction over the subject matter of the controversy, all the authorities agree that the judgment is void, however honestly it may believe it is acting rightfully, whatever may be the recitals of its record, however formal may be its acts, or however judicious its conclusions. If it lacked power to perform the judicial act it undertook, its finding that it had jurisdiction adds nothing to the verity of its pretended judgment. Its power was usurped and its finding that it possessed the power in no way confers it.

Until the jurisdictional requirements of the statute have been complied with there is no decision. The relief sought in this protest is not a review of the decision rendered by the single justice sitting in reappraisement but a review of the legal power of the single justice to render that which, without such power duly exercised, does not become in fact a decision as contemplated by the statute. The statutory conditions not having been complied with, no question for decision exists. *Maddaus* v. *United States,* 3 Ct. Cust. Appls. 330, T. D. 32623.

The element of legality being absent from the finding, which was the basis of the assessment of the antidumping duties against which protest was made, we do not think Justice Fischer had jurisdiction to render the character of judgment which was rendered, and we so hold. Under this view of the case we do not think appellee is precluded from proceeding by way of protest, even though it might have raised the same question upon the appeal to reappraisement.

In the case of the *United States* v. *Central Vermont Railway Co.* (*Commonwealth Shoe & Leather Co.*), *supra,* this court holds that the validity of a finding analagous to T. D. 41713, save that it was signed by an Assistant Secretary, can be raised in reappraisement proceedings, but were the conclusion otherwise, then appellee, had it relied wholly upon the reappraisement section, would have lost its rights, whereas appellant has lost no right which it ever possessed.

The judgment of the Customs Court is *affirmed.*

### DISSENTING OPINION

HATFIELD, Judge: I regret that I am unable to concur in the majority opinion. While I am very strongly of the opinion that it is the duty of the Secretary of the Treasury to make the findings provided for in section 201 (a) of the Antidumping Act of 1921, I distinguish between the "findings" of the Secretary and the mere publication of them.

The section involved reads as follows:

SEC. 201. (a) That whenever the Secretary of the Treasury (hereinafter in this Act called the "Secretary"), after such investigation as he deems necessary, finds that an industry in the United States is being or is likely to be injured, or is prevented from being established, by reason of the importation into the United States of a class or kind of foreign merchandise, and that merchandise of such

class or kind is being sold or is likely to be sold in the United States or elsewhere at less than its fair value, *then he shall make such finding public to the extent he deems necessary, together with a description of the class or kind of merchandise to which it applies in such detail as may be necessary for the guidance of the appraising officers.*

(b) Whenever, in the case of any imported merchandise of a class or kind as to which the Secretary has not so made public a finding, the appraiser or person acting as appraiser has reason to believe or suspect, from the invoice or other papers or from information presented to him, that the purchase price is less, or that the exporter's sales price is less or likely to be less, than the foreign market value (or, in the absence of such value, than the cost of production) he shall forthwith, under regulations prescribed by the Secretary, notify the Secretary of such fact and withhold his appraisement report to the collector as to such merchandise until the further order of the Secretary, *or until the Secretary has made public a finding as provided in subdivision (a) in regard to such merchandise.* (Italics mine.)

The public notice of the findings of the Secretary of the Treasury, in the case at bar, reads as follows:

*Antidumping—Finding by the Secretary of the Treasury*

*The Secretary of the Treasury makes a finding under section 201 (a), antidumping act of 1921, of dumping in the case of pins imported from Germany*

TREASURY DEPARTMENT, *July 19, 1926.*

*To Collectors of Customs and Others Concerned:*

Section 201 (a) of the antidumping act of 1921 provides as follows:

That whenever the Secretary of the Treasury (hereinafter in this Act called the "Secretary"), after such investigation as he deems necessary, finds that an industry in the United States is being or is likely to be injured, or is prevented from being established, by reason of the importation into the United States of a class or kind of foreign merchandise, and that merchandise of such class or kind is being sold or is likely to be sold in the United States or elsewhere at less than its fair value, then he shall make such finding public to the extent he deems necessary, together with a description of the class or kind of merchandise to which it applies in such detail as may be necessary for the guidance of the appraising officers.

After due investigation I find that the industry of making pins in the United States is being or is likely to be injured by reason of the importation into the United States of common and safety pins from Germany, and that such merchandise is sold or is likely to be sold in the United States at less than its fair value.

F. A. BIRGFELD,

*Acting Assistant Secretary.*

(Beginning "Finding" and ending "Germany," italics mine.)

The majority opinion holds, in substance and in effect, that the Secretary of the Treasury has no authority to delegate the power of signing the public notice of his findings to the chief clerk of the department. I am not in accord with these views. While I regard the statute as mandatory in requiring the ultimate findings to be made by the Secretary of the Treasury, it seems to me that, as regards the publication of such findings, it is only necessary that the Secretary of the Treasury *cause* his findings to be made public, and only to such extent as he deems necessary.

We held, in the case of *United States* v. *Central Vermont Railway Co.*, 17 C. C. P. A. 166, T. D. 43474, decided concurrently herewith, that it is not necessary that the Secretary of the Treasury sign the so-called "dumping order," but that the same might be signed by an Assistant Secretary, provided only that the Assistant Secretary be duly authorized in the premises. Furthermore, we there held that, there being no evidence to the contrary, the authority of the Assistant Secretary would be presumed. With that decision I am in entire accord.

The majority opinion in this case, however, attempts to distinguish between a publication signed by an Assistant Secretary and one who styles himself "Acting Assistant Secretary." There is a distinction, of course, but, in my opinion, it is without legal effect.

It appears in the record that F. A. Birgfeld, who signed the so-called "dumping order" as "Acting Assistant Secretary" was at the time chief clerk of the Treasury Department. Sections 246, 247, and 249 of the United States Code read as follows:

246. ASSISTANT SECRETARIES OF THE TREASURY.—There shall be in the Department of the Treasury three Assistant Secretaries of the Treasury, who shall be appointed by the President, by and with the advice and consent of the Senate (R. S. sec. 234; July 11, 1890, ch. 667, sec. 1, 26 Stat., 236; Mar. 3, 1917, ch. 163. sec. 1, 39 Stat. 1083; Oct. 6, 1917, ch. 79, sec. 1, 40 Stat. 347).

247. SAME; DUTIES.—The Assistant Secretaries of the Treasury shall examine letters, contracts, and warrants prepared for the signature of the Secretary of the Treasury, and perform such other duties in the office of the Secretary of the Treasury as may be prescribed by the Secretary or by law. (R. S. sec. 245.)

249. CHIEF CLERK AND SUPERINTENDENT TO BE CHIEF EXECUTIVE OFFICER OF DEPARTMENT.—The chief clerk and superintendent of the Treasury Department shall be the chief executive officer of the Department, *and may be designated by the Secretary of the Treasury to sign official papers and documents during the temporary absence of the Secretary, Undersecretary, and Assistant Secretaries of the department.* (Italics mine.)

It will be observed that section 249, *supra*, provides that the chief clerk may be designated by the Secretary of the Treasury to sign official papers and documents during the temporary absence of the Secretary, Undersecretary, and Assistant Secretaries of the department.

There is nothing in the record to show that Mr. Birgfeld did anything more than sign an official paper or document which, in the case at bar, is a mere public notice of the findings of fact, actually or presumptively made by the Secretary of the Treasury.

If, in the absence of evidence to the contrary, it will be presumed that an Assistant Secretary of the Treasury is acting under the direction of the Secretary of the Treasury, as was held in the *Central Vermont Railway Co.* case, *supra*, I can see no reason for not holding that the chief clerk of the department was so acting under a similar state of facts.

190

The published order is in the identical language, with the exception of the language used to identify the merchandise involved, of the so-called "dumping order" in the *Central Vermont Railway Co.* case, *supra.* It purports to be a public notice of a finding by the Secretary of the Treasury. It is contended that the language "After due investigation I find," etc., followed by the signature of F. A. Birgfeld, who styles himself "Acting Assistant Secretary," indicates that Birgfeld made the findings of fact therein set forth. If that is true in this instance, it was no less true in the *Central Vermont Railway Co.* case, *supra.* It may be that the inconsistency, if any, between the language last quoted and the first two sentences of the public notice requires construction of the notice. If such be the case, and if the language of the notice is open to two constructions, one consistent and the other inconsistent with its legality, the former should be adopted by the courts, as was done in the *Central Vermont Railway Co.* case, *supra.*

My opinion is, therefore, that the Secretary of the Treasury may legally authorize and direct any of the Assistant Secretaries of the Treasury to sign and make public a notice of the *findings of the Secretary;* and that he may legally authorize the chief clerk to do likewise, during the temporary absence of the Secretary, Undersecretary, and Assistant Secretaries. Furthermore, when, as in the case at bar, the record shows that such a public notice has been signed by the chief clerk, whether he signs as "Acting Assistant Secretary" or otherwise, it will be presumed that the conditions of the statute have been complied with. To hold otherwise is, in effect, holding that the chief clerk of the department can not under any circumstances sign a mere public notice of the *Secretary's findings of fact as required by section 201 (a).* In view of the fact that such a notice is nothing more than an official document or paper, it seems to me that the authority conferred by section 249, *supra,* has been judicially denied.

In my opinion, and for the reasons stated, the court below should have dismissed the protest, and, having failed to do so, its judgment should be *reversed.*