New York Merchandise Co., Inc. *v.* United States

No. 6142.—Invoice dated Kobe, Japan, May 14, 1941.
Certified May 14, 1941.
Entered at New York, N. Y., June 24, 1941.
Entry No. 769812.

(Decided May 8, 1945)

*James W. Bevans* for the plaintiff.

*Paul P. Rao,* Assistant Attorney General (*Samuel D. Spector,* special attorney), for the defendant.

Oliver, Presiding Judge: This appeal for reappraisement covers various kinds of Christmas decorations imported from Japan and entered at the port of New York. The merchandise was entered at the invoice unit prices, plus fee for labels. The appraiser advanced the value by adding certain percentages to the unit values, but made no report as to the basis under section 402 upon which his appraisement was predicated.

The appraised values are returned in red ink on the invoice as follows:

Appraised at invoice units plus 6.15% on unit, plus 0.54% on unit, case and packing included.

Appraised at invoice units plus 6.15% on unit, plus 1.62% on unit, case and packing included.

Appraised at Yen 12.25 per gross pk'd plus 6.15% on unit, plus 2.70% on unit.

The commission is stated on the invoice as 6 per centum, computed on the invoice value of the goods plus charges expressed on the invoice. The percentages as expressed by the appraiser represent the amounts charged for commission and fees as applied to the unit values of the merchandise.

Plaintiff contends that the merchandise was purchased from Japanese manufacturers through a commissionaire and that the item of commission was no part of the dutiable value.

The case was originally submitted for decision after plaintiff had introduced evidence on the question of the nature of the commission. The Government moved to dismiss the appeal on the ground that the plaintiff had failed to establish a *prima facie* case in that it had failed to show that the export value was different from the appraised value,

or that there was no foreign value, or that the foreign value, if any, was less than the export value. Subsequently, by order of the court, dated November 20, 1944 (Reap. Dec. 6071), the case was restored to the calendar and the testimony of the examiner was introduced by plaintiff and taken over the objection of Government counsel.

The Government contends that the testimony of the examiner is incompetent and irrelevant, as he was not the appraising officer. The witness (examiner) testified that he ascertained and reported a value by all reasonable means under section 402. He was then asked what the figure 6.15, as reported by him, represented—what it meant (R. 70, 72). Over Government objection the witness was permitted to answer that it represented "the amount which was charged for commission as applied to the unit of merchandise" (R. 81) and that "There is an addition of 0.54 per cent on unit to account for other charges for fees" (R. 82). The witness was also interrogated as to whether the value found represented "foreign value, export value, United States value, cost of production?" (R. 82) and over objection was permitted to answer that "It represents the higher of the various types of value—the highest of the various types of value set forth in section 402" (R. 83). In response to the question "Did you find in the course of your duties under section 402 that there existed a home value for that merchandise?" (R. 83), the examiner was, over objection of Government counsel, permitted to answer that he had "determined whether or not a foreign value existed" (R. 84) and that "The merchandise was not sold in the foreign market" to the best of his knowledge (R. 91). It also appears in the record that the examiner's report was adopted by the assistant appraiser and the appraiser (R. 91, 92).

The Government contends that the above testimony, to which due objection was taken, is inadmissible as it calls for the operation of the examiner's mind and that he may not be so interrogated. Objection is also made that, not being the appraiser, the examiner may not be interrogated as to any action taken by the appraiser. It is also urged that an appraising officer may not be questioned as to the considerations that impelled his action.

The foregoing queries were not directed to the question of "what grounds influenced or controlled his mental processes" nor was the witness asked to disclose the reasons which impelled his conclusions (*Wolff* v. *United States*, 1 Ct. Cust. Appls. 181, T. D. 31217). The witness was permitted to state what he did, not why or how he did it. Where the appraiser approves and adopts the action of the examiner and assistant appraiser, as was done here, their observations and judgment become that of the appraiser (*MacMillan Co.* v. *United States*, 11 Ct. Cust. Appls. 466, T. D. 39536). It is reasonable

to assume that when a statement or figure is placed upon an invoice by an examiner in ascertaining value he may be interrogated to explain what the statement or figure represents. The court is not compelled to speculate upon such markings when the man who made them is in the witness chair and states that such markings were placed there in the course of the performance of his official duties.

The duties of assistant appraisers and examiners are specifically provided for in section 500 of the Tariff Act of 1930 as follows:

SEC. 500.

&ast;  &ast;  &ast;  &ast;  &ast;  &ast;  &ast;

(d) ASSISTANT APPRAISERS.—It shall be the duty of an assistant appraiser—

&ast;  &ast;  &ast;  &ast;  &ast;  &ast;  &ast;

(2) To revise and correct the reports and to supervise and direct the work of such examiners and other employees as the appraiser may designate; and

&ast;  &ast;  &ast;  &ast;  &ast;  &ast;  &ast;

(e) EXAMINERS.—It shall be the duty of an examiner to examine and inspect the merchandise and report the value and such other facts as the appraiser may require in his appraisement or report, and to perform such other duties as may be prescribed by rules and regulations of the Secretary of the Treasury or the appraiser.

In connection with this question of the right of an examiner to testify as to his actions it is of particular interest to note that in prescribing the procedure for an appeal to the United States Customs Court, provision is made that the trial judge shall "determine the value of the merchandise from the evidence in the entry record and that adduced at the hearing." It is further provided (sec. 501, as amended by the Administrative Act of 1938) that:

&ast; &ast; &ast;. In finding such value affidavits and depositions of persons whose attendance can not reasonably be had, &ast; &ast; &ast; reports or depositions of &ast; &ast; &ast; appraisers, assistant appraisers, *examiners*, and other officers of the Government may be admitted in evidence. [Italics supplied.]

It seems clear that as reports and depositions of examiners may be received in evidence that they are not disqualified from giving oral testimony. I am of opinion that an examiner may properly be interrogated as to what he did even though he may not always be permitted to explain how or why he did it. There should be no mystery as to what an examiner did especially where, as in the present case, the value found by him was adopted by the assistant appraiser and the appraiser without modification.

In *Joseph Fischer as Liquidating Agent of Schmoll Fils Assd., Inc., et al.* v. *United States*, Reap. Dec. 5881, this court (Tilson, J.), said:

&ast; &ast; &ast;. In our view it is just as much a part of the duty of the appraiser under the law in finding the value of imported merchandise to indicate on the official papers before him the basis of the value of imported merchandise as it is for him to place upon the official papers the figures which he ascertains or estimates to be the value of the merchandise. &ast; &ast; &ast;. Certainly the Congress

never intended that the appraiser should ascertain or estimate the value of imported merchandise and never reveal to any one what that estimation or ascertainment was. Neither did the Congress intend that the appraiser should keep it a secret and never reveal to any one the basis of his appraisement. * * *

In commenting on article 776 of the Customs Regulations of 1937, as amended, the court further stated:

However, the fact that said amended regulation does not require the appraising officer to indicate upon the invoice the basis of his ascertained or estimated value does not relieve the appraiser, *or the appraising officer*, from complying with section 402 by indicating upon the invoice or other official papers the basis of the actual figures which he ascertains or estimates to be the value of the merchandise, to wit: foreign, export, or United States value, cost of production, or American selling price. The basis of appraisement lies at the very threshold of any action taken by the appraising officer in ascertaining or estimating the value of imported merchandise. It is an integral and inseparable part of such action. In our opinion, it was never the intent of the Congress in enacting section 402 to permit the appraising officer to place the figure or set of figures upon the invoice or official papers, and then leave it to those who were bound by such figure or figures to guess whether such figure or figures represented foreign, export, or United States value, cost of production, or American selling price. [Italics supplied.]

In *Raphael Weill & Co.* v. *United States*, Reap. Dec. 6069, the examiner was interrogated as to "whether he had any knowledge, at the time of his appraisal, concerning 'the price at which merchandise such as is covered by the invoice was sold in France for home consumption to purchasers other than producers'." Commenting upon the action of the trial judge in permitting such interrogation, the court (Cole, J.) found no error in admitting such testimony, and said:

* * *. Permitting the witness to testify to the extent indicated, did not, in our opinion, violate the rule against a disclosure of the method used in arriving at the appraised values of the several items in question. * * *.

Upon the trial the disputed evidence sought from the examiner was admitted over objection of Government counsel. An examination of the authorities called to my attention by counsel has not caused me to take a different position from that taken at the trial. The questions propounded to the examiner are admissible and the testimony so elicited is a part of the record now before me.

Plaintiff claims the item of 6.15 per centum of the unit appraised values, as found by the appraiser, represents a buying commission which is not a dutiable item and should not be included in the export value.

Two witnesses testified for the plaintiff. From their testimony it appears that the merchandise in question was purchased from various manufacturers in Japan. One of the witnesses, a buyer for the plaintiff, stated he visited Japan and that, with a representative from Strong & Co., the shippers in this case, he visited many of the manufacturers of this type of merchandise, examined samples, talked with them about prices and quantities, and initiated negotiations for pur-

chases. It also appears that Strong & Co. provided the plaintiff herein with headquarters in Japan where books and records were kept and office business was conducted. Strong & Co. also checked the progress of the manufacturer and the time of delivery. The goods ultimately were delivered to the warehouses of Strong & Co. where they were inspected, checked for quantity and size, and were compared with samples which were kept in their sample file. Strong & Co. also prepared the merchandise for shipment, arranged shipping space, and shipped the goods to the plaintiff. The particular merchandise covered by this invoice was not purchased while the witness was in Japan but similar merchandise was then bought by him. The particular merchandise under consideration was purchased on reorder by cables to Strong & Co., who paid the manufacturers and drew on the plaintiff for the money.

The merchandise was shipped by the manufacturers to Strong & Co., billed to them, paid for by them, and Strong & Co., in turn, invoiced the merchandise to the plaintiff. The commission of 6 per centum on the total amount of the invoices included all of the charges for the services of Strong & Co.

On the record thus made, I find that the proper basis for the determination of the value of this merchandise is the export value, as that value is defined in section 402 (d) of the Tariff Act of 1930; that the item of commission of 6 per centum, or 6.15 per centum as added by the appraiser, represents a buying commission which is not part of the export value; and that the appraised values, less the items of "6.15% on unit," represent such export values.

Judgment will be rendered accordingly.