UNITED STATES *v.* NEW YORK MERCHANDISE CO., INC.

**No. 6269.**—Invoice dated Kobe, Japan, May 14, 1941.
Certified May 14, 1941.
Entered at New York, N. Y., June 24, 1941.
Entry No. 769812.

Second Division, Appellate Term

(Decided April 1, 1946)

*Paul P. Rao*, Assistant Attorney General (*Daniel I. Auster* and *Samuel D. Spector*, special attorneys), for the appellant.
*James W. Bevans* for the appellee.

Before TILSON, KINCHELOE, and LAWRENCE, Judges; LAWRENCE, J., concurring in part

TILSON, Judge:   This application for review of the decision of the trial court was filed under the provisions of section 501 of the Tariff

Act of 1930. The merchandise consists of various kinds of Christmas decorations which were imported from Japan and entered at the port of New York on June 24, 1941. Entry of the merchandise was made at the invoice unit prices, plus certain fees for labels, and was appraised as follows:

Appraised values in Japanese Yen. Items of merchandise in crates 6733/6753 incl. and 6771/72 are appraised at invoice units, plus 6.15% on unit, plus 0.54% on unit, case and packing included.

Items of mdse in crates 6754/6755 are appraised at invoice units, plus 6.15% on unit, plus 1.62% on unit, case and packing included.

Appraised at Yen 12.25 per gross pk'd plus 6.15% on unit, plus 2.70% on unit.

At the beginning of the trial before the court below, counsel for the importer made the following statement:

\* \* \* Then there is another item of commission 6 per cent. Now, that is the item with which we are concerned in this case today. We are not making any point as to these control fees. They may or may not be part of market value, but we are not in position to go into that question at this time. Therefore, our case is limited solely to the question of this commission.

\*  \*  \*  \*  \*  \*  \*

Now, it is our theory of the case that if we prove that this 6 per cent, or, based on the unit value, 6.15 per cent, was strictly a commission, and under many decisions of this Court and Appellate Court and other courts of the United States, not a part of market value; that that settles the dispute between the parties to this litigation. That is, there is no dispute as to these unit values. \* \* \* if it were not for this commission we would not be here today. \* \* \*

Counsel for the Government stated his position as follows:

The Government's position is that the appraised values represent the export value of the merchandise; that the so-called buying commission is a part of the unit price of the merchandise. \* \* \*

After the case was submitted the trial judge, on his own motion, set aside the submission and restored the case to the docket, and in the order so doing, the trial court, among other things, stated:

Subsequent to the submission of this case, plaintiff's counsel stated that because of certain comments by the court he did not call the examiner to testify. From the record it is evident that counsel was prepared to call the examiner to establish that the exact advance made by the appraiser was that of the commission.

The examiner very reluctantly testified that the 6.15 per centum, as reported by him, represented the amount which was charged for commission as applied to the unit of merchandise, and that in the course of his duties he had determined whether or not a foreign value existed, and that the merchandise was not sold in the foreign market, to the best of his knowledge.

It will be observed from the above quotation from counsel for the Government that he conceded that export value was the proper basis for appraisement.

At the second hearing of this case counsel for the importer stated his position very fully and very clearly, as follows:

Now, in order to constitute export value the merchandise must have been freely offered for sale to all buyers in the principal markets of Japan and in the usual wholesale quantities. Therefore, the examiner, in order to find export value in this case, must have found either that there was no foreign value, or if there was foreign value, the export value as he returned it was higher, that the merchandise as shown on the invoice was in the usual wholesale quantities and that it was freely offered, and that it was purchased in the principal markets of Japan.

Now, those were the findings that necessarily were contained in this return of value and those were the findings which were presumptively correct and which I had to overcome, or such of them as I challenged. Now, I didn't challenge the fact that export value was the proper basis of appraisement. I didn't challenge the fact that we purchased in the principal markets and in usual wholesale quantities and in the ordinary course of trade, and that the merchandise was freely offered, but I did challenge the amount of the export value returned by the appraiser which, it was obvious from the papers in the case, consisted of the invoice unit price plus an addition to represent the amount of commission so stated on the invoice and certain control fees.

The trial court accepted the testimony of the examiner as representing the observations and judgment of the appraiser, stating that:

\* \* \* Where the appraiser approves and adopts the action of the examiner and assistant appraiser, as was done here, their observations and judgment become that of the appraiser (*MacMillan Co.* v. *United States*, 11 Ct. Cust. Appls. 466, T. D. 39536).

In the *MacMillan* case, *supra*, the appellate court stated:

\* \* \* The observation and judgment of the examiner and assistant appraiser do not, however, become the observation and judgment of the appraiser until he approves their reports.

Another and perhaps more direct way of saying the same thing would be that when the appraiser approves the reports of the examiner and assistant appraiser, the observations and judgment of the examiner and assistant appraiser become the observations and judgment of the appraiser.

However, in the case of *United States* v. *Eurasia*, 33 C. C. P. A. 123, C. A. D. 326, the examiner, instead of the appraiser, was called to testify, and regarding the testimony of the examiner the appellate court stated:

\* \* \* Counsel for the Government, however, did not call the appraiser who officially made the appraisement but called the examiner whose official duty was merely to make recommendations of dutiable values. The appraiser was not bound by such recommendations. If counsel for the Government felt that the importer had established a *prima facie* case, it would seem to have been logical procedure for counsel to call the appraiser, and have him explain the reasons for his advancement of values.

As was correctly stated in the decision of the single judge "\* \* \* the examiner does not appraise the merchandise; that is the function of the appraiser \* \* \*"

The facts in the *Eurasia* case, *supra*, and the facts in the instant case, with reference to the testimony of the examiner representing the observations and judgment of the appraiser, are so nearly parallel, and the holding of our appellate court in the *Eurasia* case, *supra*, that the appraiser, not the examiner, is the proper party to give this information, is so clear that we feel bound to follow the latest expression of our appellate court in the *Eurasia* case, *supra*, that "* * * it would seem to have been logical procedure for counsel to call the appraiser, and have him explain the reasons for his advancement of values."

We are not in disagreement with the holding of our appellate court in the *MacMillan* case, *supra*, as hereinbefore set out, and that case is ample authority for holding that when the appraiser adopts the action of the examiner and assistant appraiser, their observations and judgment become that of the appraiser. However, the evidence in this case that the appraiser adopted the observations and judgment of the examiner and assistant appraiser is no stronger than was the evidence in the *Eurasia* case, *supra*, that the appraiser had adopted the observations and judgment of the examiner and assistant appraiser, and yet on a very similar state of facts our appellate court was careful to point out in the *Eurasia* case, *supra*, that "* * * it would seem to have been logical procedure for counsel to call the appraiser, and have him explain the reasons for his advancement in values."

In view of what has been said, we feel the trial court fell into error in holding in this case that the appraiser had adopted the observations and judgment of the examiner and assistant appraiser, as follows:

Where the appraiser approves and adopts the action of the examiner and assistant appraiser, *as was done here,* their observations and judgment become that of the appraiser. [Italics ours.]

In fairness to the trial court it should be stated that its decision in the instant case is dated May 8, 1945, whereas the decision of our appellate court in the *Eurasia* case is dated January 4, 1946.

For the reasons heretofore stated we reverse the decision and judgment of the trial court and remand the case to the trial court for the purpose of permitting counsel for the importer to call the appraiser "and have him explain the reasons for his advancement of values" with particular reference to the item of 6.15 per centum, which counsel for the importer contends is a buyer's commission, and therefore not dutiable, and also for the introduction of such other evidence as may be desired by counsel for either party.

In view of the conclusion we have reached we have not considered the case on its merits, and therefore express no opinion on that phase of the case.

Judgment will be rendered reversing the decision and judgment of

the trial court and remanding the case to the trial court for the purposes hereinbefore stated.

OPINION CONCURRING IN PART

LAWRENCE, Judge: I agree with my associates that the judgment appealed from should be reversed and the cause remanded for further proceedings. However, I do not concur in their reasoning nor approve of their judgment which decrees that—

\* \* \* the cause is remanded to the trial court for the purpose of permitting counsel for the importer to call the appraiser, instead of the examiner, "\* \* \* and have him explain the reasons for his advancement of values" with particular reference to the item of 6.15 per centum, and also for the introduction of such other evidence as may be desired by counsel for either party.

While I perceive no objection to permitting the appraiser to testify in reappraisement proceedings within certain limits, not here necessary to recite, it would seem to be contrary to the weight of judicial authority to direct, by clear implication, that counsel should be permitted to explore the mental processes or to search the reasons which actuated the appraiser in finding value pursuant to section 500 (a) of the Tariff Act of 1930, and I do not regard the *Eurasia* case, cited by my associates, as "holding" to that effect. Note *Wolff* v. *United States*, 1 Ct. Cust. Appls. 181, T. D. 31217.

Mindful of the history of this case, and with a view to facilitating its ultimate disposition, it is my opinion that the judgment herein should be so phrased as to permit the introduction of such available competent evidence as legally may be required to enable the trial judge properly to determine the value of the merchandise, as provided in section 501 of said act.